UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| ALMA DORINDA WATSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. CV414-213 |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Alma Dorinda Watson applied for Social Security Disability Insurance benefits (DIB) on July 10, 2011, alleging disability since January 18, 2003. Tr. 91, doc. 8 at 93-99.[1] Her application was denied administratively, so her claims are now ripe for judicial review. Doc. 1.

## I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

---

[1] "Doc." citations reference the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the top right corner of the administrative record, which is located on the docket at Doc. 8.

2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies:

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. Id. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe."[2] Id. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. Id. § 404.1520(a)(4)(iii). If not, the ALJ must

---

[2] An ALJ may dismiss at step two if the alleged impairments do not meet the applicable severity or duration requirements, but claimants are not required to show very much because this step is "designed to screen out only clearly groundless claims," *Hinkley v. Astrue*, 2011 WL 2144624 at * 6 (S.D. Ga. May 31, 2011). It thus knocks out "those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir.1985)).

then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[3] *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured." 42 U.S.C. § 423(a)(1)(A) (2005). Watson was last insured on December 31, 2008, Tr. 543, so her DIB appeal requires a showing of disability on or before that last date. *Moore*, 405 F.3d at 1211.

---

[3] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

3

## II. BACKGROUND

Looking to Watson's alleged disability onset and date last insured, the ALJ considered only "evidence through the end of 2008. [So, u]nless the impairment arose between January, of 03, and December '08, it may not be considered as a basis for a finding of disability." Tr. 544. Plaintiff was forty-seven years old at the time of the ALJ's subsequent decision, and 42 on December 31, 2008. Tr. 17, 23-24, 91, 544. She completed the eleventh grade, Tr. 24, 553-54, and had past relevant work as a transportation company dispatcher. Tr. 593.

Watson claimed, among other ailments, that she was unable to work due to ovarian cancer, hip pain, herniated disc, bulging disc injury, and lumbar spine impairment. Tr. 103; *see also* Tr. 23 ("The claimant alleges disability due to pain and limitations secondary to a history of various orthopedic conditions."). She "stopped working in 2003 due to severe right shoulder pain." Tr. 24; *id.* at 554-55 (she was then a customer service clerk doing data entry and dispatching drivers for a transportation company); *see also id.* at 557 ("I was in too much pain and had to quit."). The pain's origin: "She had undergone a right

shoulder surgery in 2000 and is right hand dominant." Tr. 24. She thus cannot lift her right hand or arm without suffering pain, which she suffers even from typing. Tr. 24; *see also id.* at 557-58 (the pain originates from the shoulder surgery).

Applying the sequential evaluation process set forth above, Tr. 20-28 (doc. 8 at 22-30), the ALJ found that Watson suffered from the following severe impairments through the date she was last insured: a "history of labral tear of the right shoulder with arthroscopic repair (2000); [a] history of a right tibial plateau fracture with surgical repair and hardware removal (2006); and a history of left L-4/L-5 microdiscectomy (2007)." Tr. 22; *see also id.* at 560 (plaintiff's testimony about this fracture's impact on her capabilities). Hence, she made it to step three of the sequential process noted above.

But, the ALJ found, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, subpart P, Appendix 1. *Id.* He first noted that neither Watson nor her non-lawyer legal representative even suggested that she had "alleged an impairment,

singly or combined, that" met that benchmark. Tr. 22. Nor did any "acceptable treating, examining or non-examining medical source" say that. And Dr. Darius Ghazi, M.D. -- an expert who provided telephonic testimony at the hearing -- opined that no listing was met, or medically equaled, by her orthopedic conditions. Tr. 22-23.[4]

The ALJ then progressed to step four, where he found that plaintiff had the RFC to perform a range of sedentary work. Tr. 23-26. She could sit a total of six hours in an eight-hour workday and stand and/or walk a total of two hours in an eight-hour workday with reasonable and customary breaks. *Id.* (finding No. 5). She could occasionally lift 10 pounds and more frequently 5 pounds or less with her dominant right hand, and through the date she was last insured, she was capable of performing her past relevant work as a motor vehicle dispatcher. Tr. 23, 26. *That* "work did not require the performance

---

[4] Dr. Ghazi testified that Watson does have "multiple health issues" and endured several surgeries, but "all these procedures were rather successful." Tr. 544. He did note other health issues (ovarian cancer now in remission; intestinal issues treated by medication). *Id.* at 545. But he found no orthopedic condition "which would have met or equaled one of [the SSA's] listed impairments during the" 2003-2008 time period referenced *supra*. *Id.* Thus, he opined, she could do sedentary work. *Id.* at 547-48.

6

of work-related activities precluded by" her present RFC, Tr. 26, and a Vocational Expert (VE) testified that (a) her past work is classified in the Dictionary of Occupational Titles (DOT) that her past work involved "sedentary exertion." Tr. 26; *see also id.* at 595. The VE opined that an individual fitting Watson's profile could perform both her past relevant work as well as "other sedentary jobs existing in the national economy." Tr. 26.

The ALJ also considered an alternative finding based on the conclusion that Watson "required a sit-stand option as posed by the [ALJ] to the [VE]." Tr. 26-27; *see also id.* at 595-98 (questing the VE based on a sit-stand limitation). Considering her age, education, work experience, and her RFC with the addition of a sit/stand option every thirty minutes, along with VE's testimony, the ALJ found that there was other work that existed in significant numbers in the national economy that plaintiff could perform (*e.g.*, an addresser, a receptionist, and a document preparer). Tr. 27-28; *see also id.* at 596. Accordingly, Watson was not disabled at any time from January 18, 2003, the alleged onset date, through December 31, 2008, the date she was last insured.

Tr. 28.

## III. ANALYSIS

### A. Medical Evidence

Watson complains that the ALJ did not properly weigh opinions by her treating physician Joseph Shaughnessy, doc. 10 at 1, 10-3 and failed to properly evaluate her credibility. *Id.* at 14-17. An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012). Good cause exists when:

> (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

As a general rule, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians

8

are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991). Finally, "[t]he ALJ must state with particularity the weight given different medical opinions, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)." *Bradley v. Colvin*, 2015 WL 6746782 at * 2 (N.D. Ala. Nov. 5, 2015).[5]

---

[5] The *Bradley* court noted an important distinction that has evolved in this area of law:

> Additionally, the ALJ has a duty to fully and fairly develop the record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). Under the current law, the ALJ is not obligated to recontact physicians if he finds the evidence to be inadequate. This action is now discretionary. See 20 C.F.R. § 404.1520b(c)(1) (stating that the ALJ "*may* [not must] recontact your treating physician, psychologist, or other medical source" to resolve inconsistencies or insufficiencies in the record) (emphasis added).

*Bradley*, 2015 WL 6746782 at * 2. Also, this isn't a case where the ALJ should have inquired into the reasons why the claimant failed to seek additional medical care and unfairly used the non-quest for more care against her, *Henry v. Commissioner*, 802 F.3d 1264, 1268 (11th Cir. 2015); *Springer v. Colvin*, 2015 WL 6503700 at * 5 (N.D.

The ALJ was authorized to discount Dr. Shaughnessy's opinion. For example, Dr. Shaughnessy wrote -- in September 2011, and after having last examined Watson in July, 2011, Tr. 502:

> The combination of her ongoing issues requiring evaluation and treatment, the distractions of pain and medication side effects and the mood dysfunction have left her unable to perform on a consistent, competitive basis. It is my opinion she is disabled and her prognosis is for no considerable improvement and probable gradual decrease in her functional capacities.

Tr. 510.

Dr. Shaughnessy did note her conditions -- *in 2011* -- but it is undisputed that Watson must prove disability from 2003-2008, so that opinion provides at best inferential (thus, "disregardable") support for plaintiff here. Plus it is conclusory, and whether a claimant is "disabled" is a legal rather than a medical determination. *Lewis*, 125 F.3d at 1440 ("[W]e are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition.").[6] Nothing in the

---

Ala. Oct. 28, 2015), because here Watson herself obtained and received the benefit of successful surgeries *and* aftercare by her family physician.

[6] *See also Hewitt v. Colvin*, 2015 WL 6560527 at * 3 (M.D. Fla. Oct. 29, 2015)

plaintiff's medical records undermines the ALJ's determination here. *See, e.g.*, Tr. 513 (Dr. Shaughnessy's February *2011* conclusion that Watson was "unable to work" based on then contemporaneous findings, not 2003-2008 medical findings); *id.* at 512 (he wrote in March *2011* that she had been unable to work for 12 consecutive months). *See Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) ("[T]he ALJ should have afforded Dr. Ansari's 2011 opinion less weight [because] . . . Dr. Ansari completed his assessment two years after Mr. Castle's date last insured.").

Conversely, the ALJ was authorized to rely on Dr. Ghazi's opinion. *Thomas v. Colvin*, 2015 WL 4458861 at * 14 & n. 8 (S.D. Ala. July 21, 2015) ("Because the ALJ had good cause to discount [the treating physician's] opinions, the opinions of non-examining State

---

("Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)." ); *Samuels v. Colvin*, 2015 WL 7068137 at * 4 (S.D. Ga. Oct. 20, 2015) ("under SSR 96–5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96–5p, 1996 WL 374183, at *1, 2 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d).").

Agency [physician] do not conflict with any credible examining source, and thus, they were properly considered by the ALJ."); *Jones v. Colvin*, 2015 WL 5737156 at * 24 (S.D. Ala. Sept. 30, 2015). A board certified orthopedist, Tr. 541, Dr. Ghazi opined that Watson was limited to sedentary work with no reaching above shoulder level. Tr. 546-49. Also, plaintiff could not climb a ladder and thus should avoid unprotected heights, and could climb stairs only on a limited basis. *Id.* at 547. Otherwise, she had no limitations with fine or gross manipulations. *Id.* at 547-49. She also could occasionally balance, stoop, crouch, and crawl. *Id.* at 548.

Dr. Ghazi supported his opinion by remarking that plaintiff's surgeries were successful and that she had responded to conservative management "to a degree." Tr. 544-45. Her shoulder was successfully treated and her lumbar spine discectomy relieved her sciatic nerve pain. *Id.* at 316-26, 545. Plus, she only had back pain with no radiation to her legs. *Id.* at 316-26, 545. Throughout his testimony, Dr. Ghazi was cross-examined both by the ALJ and Watson's representative. *Id.* at 541-553.

Because the ALJ provided "solid, well-articulated reasons"[7] here (*i.e.*, he clearly rejected the treating physician's opinion as conclusory *and* temporally out of sync, while expressly noting Dr. Ghazi's, point-by-point medical findings and determinations, Tr. 24-26), he was authorized by this evidence to find that Dr. Ghazi's opinion was consistent with and well supported by the medical record as a whole. Tr. 26 ("Dr. Ghazi reviewed the entire medical evidence in the record

---

[7] From the Office of Hearings and Appeals, Social Security Administration:

> The opinions of nonexamining sources can be given weight only insofar as they are supported by evidence in the case record. This is not to say that opinions from nonexamining sources cannot outweigh the opinions of treating sources; rather, that we require adjudicators to have solid, well-articulated reasons when they determine that the opinions of nonexamining sources are entitled to greater weight than the opinions of treating sources[.]

II-4-1-2 STANDARDS FOR CONSULTATIVE EXAMINATIONS AND EXISTING MEDICAL EVIDENCE (FINAL RULES; 56 FR 36932, AUGUST 1, 1991), 1996 WL 1586732 at *48. Here the ALJ had the benefit of Watson's personal medical records and an orthopedist's review of them -- as presented by the live testimony of Dr. Ghazi. Tr. 541-553. Plaintiff does not complain of medical-record inadequacy, though she insists that the opinion of Dr. Ghazi, as a non-treating examiner, should not trump Dr. Shaughnessy's. Doc. 10 at 12. Dr. Ghazi, however, not only examined her medical records but articulated what reasonably expected capabilities a patient with Watson's record would have. He based that opinion on both those records and his surgical experience, which included knowledge of surgical post-op patient experience (*i.e.*, expected recovery rates, capabilities as impacted by pain meds and the post-surgical follow-up treatments that Watson received). Tr. 541-53. As noted *infra*, the ALJ was entitled to rely on his testimony to support his ruling, and specifically credit Dr. Ghazi's orthopedic-surgeon level of knowledge (specifically about patients' post-op recoveries and resulting capabilities) over that of Dr. Shaughnessy, a family physician.

13

and provided a cogent rationale and record support for his unbiased opinion and stated functional limitations. Dr. Ghazi's opinion is consistent with and is well supported by the credible medical record as a whole."). The remainder of plaintiff's arguments on this point travel the same route and otherwise invite the Court to engage in impermissible evidence reweighing.

**B. Credibility Determination**

Watson next contends that the ALJ improperly evaluated her credibility. Doc. 10 at 14-17. Where, as here, the claimant alleges pain and other subjective impairments, the ALJ must analyze it using the pain standard. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). That requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.*

Claimants like Watson may rely on their own subjective testimony of pain, which, if supported by medical evidence, would be sufficient to

establish disability. But at the same time, an ALJ is free to discredit that testimony. *Id.*[8] He need only "articulate [his] explicit and adequate reasons for doing so." *Id.*; *Springer*, 2015 WL 6503700 at * 8.

The ALJ did that here. He evaluated Watson's credibility and gave ample reasons for reaching his conclusion that her subjective complaints were not entirely credible. His credibility findings were both explicit and supported by citation to specific evidence. Example: "She has described daily activities which are not limited to the extent one would expect[,] given the complaints of disabling symptoms and limitations. The claimant partakes in a wide variety of daily activities that can be physically demanding and are not the type expected from a totally disabled individual." Tr. 25. He also noted, as did Dr. Ghazi,

---

[8] As the Eleventh Circuit explained:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir.1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

that Watson's surgeries were "generally successful in relieving [her] back, right shoulder and right knee symptoms. This is further evidenced by the fact that [she] sought most of her ongoing follow up medical care with Dr. Shaughneessy, a family physician, rather than with the surgeons or pain management specialists." Tr. 25.

It remains the ALJ's province to determine claimant's credibility so long as he explains his credibility determination. *Holt*, 921 F.2d 1221, 1223–24 (11th Cir. 1991). He has highlighted contradictions in the statements and the record,[9] and the record does not reveal any

---

[9] Recall that the focus here was during the relevant period (2003-2008) and that plaintiff testified on April 10, 2013 (Tr. 537) about her daily living activities during the 2003-2008 period. She said she had spent her time reading novels, preparing simple meals, washing dishes, doing laundry, and taking short walks outside. (Tr. 24, 579-81). Watson also testified that she watched movies, visited friends, and regularly attended church. Tr. 583-84.

True, she did say that her pain and physical incapacities abbreviated those activities. *See, e.g.*, Tr. 582 (she could only sit for 30-45 minutes, carry a gallon of bleach with her left but not right arm, walk "not even one eighth mile"). But the ALJ was authorized to consider her daily activities, 20 C.F.R. § 404.1529(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms) and note that she for the most part successfully used pain meds. *See Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.") (quotes and cite omitted). It was within his authority to consider those activities, along with notations that her symptoms improved, in finding her not entirely credible. Tr. 25, 316-26, 544-45. *See*

evidence that more than ambiguously supports Watson's statements. A reasonable person, *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), could determine that Watson is not credible based on the inconsistencies that the ALJ cited. *Springer*, 2015 WL 6503700 at * 4. He sufficiently explained his reasoning and the record supports it, which is all that the Commissioner need show here. *See, e.g., Marley v. Comm'r of Soc. Sec.*, 2015 WL 847376 at * 7 (M.D. Fla. Feb. 26, 2015) ("The ALJ therefore sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence nor will the Court disturb a clearly articulated credibility finding that is supported by substantial evidence.").

---

*Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807-08 (11th Cir. 2014) (ALJ's determination, in applying "pain standard" to symptoms of claimant, who suffered from polymyositis, that claimant was not credible, was supported by substantial evidence; despite claiming that his generalized pain sometimes prevented him from standing and that it was usually a four or five on a ten-point scale, he did not take any pain medication and was able to manage the pain, and medical records did not support his claims that he could only work a few hours a week and lift less than a half-gallon of milk; nor did they support his allegations of debilitating pain or exhaustion following only 30 minutes of sitting); *Dyer*, 395 F.3d at 1210-11 (affirming ALJ's adverse credibility finding where doctors noted and plaintiff reported that condition improved with treatment).

## IV. CONCLUSION

The ALJ's conclusion that plaintiff Watson is "not disabled," Tr. at 28, therefore should be affirmed and this case **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED**, this 18TH day of November, 2015.

*[Signature]*
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**